545 F.2d 652
 WIDING TRANSPORTATION, INC., Petitioner-Appellant,
Bigge Drayage Company, and Mojave Transportation Co.,
Intervening Petitioners-Appellants,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents-Appellees,
C & H Freightways et al., Intervening Respondents-Appellees.
 No. 75-1849.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 1, 1976.
 
 Earle V. White (argued), of White & Southwell, Portland, Ore., for petitioner.
 Peter A. Fitzpatrick, Atty. (argued), ICC, Washington, D.C., for respondent.
 John Paul Fischer (argued), of Silver, Rosen, Fischer & Stecher, San Francisco, Cal., for intervenor, Mojave Transp. Co.
 Ann M. Pougiales (argued), of Loughran & Hegarty, San Francisco, Cal., for intervenor, Bigge Drayage Co.
 J. M. Doherty (argued), of Doherty, Robertson & Maxwell, Austin, Tex., for intervenor, J. H. Rose Truck Line, Inc. & Sammons Trucking.
 
 
 1
 Russell M. Allen (argued), of White, Sutherland, Parks & Allen, Portland, Ore., for intervenor, Mitchell Bros. Truck Line & Wilhelm Trucking Co.
 
 
 2
 Before TRASK and GOODWIN, Circuit Judges, and JAMESON,* District Judge.
 
 JAMESON, District Judge:
 
 3
 Petitioner, Widing Transportation, Inc. (Widing), and intervening petitioners, Bigge Drayage Company (Bigge) and Mojave Transportation Co. (Mojave), seek judicial review of an order of the Interstate Commerce Commission denying their respective applications for certain irregular route motor carrier authority. Their applications were considered in a consolidated proceeding with those of five other motor carriers seeking similar authority. The administrative law judge recommended that the applications of three other applicants be granted and that the remaining applications, including those of petitioners, be denied. The Commission adopted, with slight modifications, the findings, conclusions, and recommended order of the judge. This appeal followed. We affirm.
 
 Background
 
 4
 On June 14, 1971, Mitchell Bros. Truck Lines filed an application with the Commission pursuant to section 207 of the Interstate Commerce Act, 49 U.S.C. § 307,[1] seeking a certificate of public convenience and necessity to operate as a heavy hauler motor carrier[2] between points in California and other points in Oregon, Washington, Idaho, Utah, Nevada, Wyoming, Colorado, and Arizona. Applications were thereafter filed by Widing, Bigge, Mojave, Ashworth Transfer, Inc., Reliance Truck Company, West Coast Truck Lines, Inc., and Salt Lake Transfer Company. These applications sought commodity authority similar to that sought by Mitchell, but over differing geographic territories.[3]
 
 
 5
 All applicants held authority allowing joint-line[4] heavy hauling service in some of the areas covered by the applications. By their applications they were seeking authority for a single-line[5] service to and from points in California and surrounding states.
 
 
 6
 The applications were consolidated into one proceeding[6] and assigned to an administrative law judge, who held extensive hearings on the application in five western cities. Each applicant was afforded an opportunity to present evidence supporting its application and to challenge evidence presented by other applicants. Numerous motor carriers, including three of the applicants, opposed one or more of the applications. The transcript consists of more than 3,000 pages, including the testimony of 289 public or shipper witnesses who testified in support of one or more of the applications. Over 300 exhibits were also received in evidence. Much of the evidence was directed toward showing a public need for the expanded single-line service and the extent of past operations of each carrier over portions of the authority sought in its application.
 
 
 7
 On July 20, 1973, the judge issued his initial decision, which recommended that the applications, as amended, of Mitchell, Reliance, and West Coast be granted and that the remaining applications be denied. Those applicants whose applications had been denied thereafter filed joint exceptions to the initial decision. Following consideration of these exceptions, the Commission, Division 1, adopted the findings and conclusions of the judge by final decision and order on February 13, 1975.
 
 
 8
 On April 16, 1975, Widing filed this petition for review of the Commission's action. Applicants Mojave and Bigge intervened as petitioners pursuant to F.R.App.P. 15(d) and 28 U.S.C. § 2323. West Coast and Mitchell, as well as several other carriers,[7] intervened in support of respondents. Bigge seeks to set aside the Commission's order in its entirety. Widing and Mojave seek to set aside those portions of the order which denied their own applications, with instructions to the Commission that their applications be granted.
 
 Administrative Law Judge's Decision
 
 9
 The administrative law judge issued an extensive initial decision reviewing the evidence of the operating authority and contentions of each applicant,[8] and setting forth his findings, conclusions and recommended order. The decision itself, consisting of 32 pages, was supplemented by appendices detailing the authority sought by each applicant (3 pages), summarizing the testimony of the shipper witnesses (137 pages), and summarizing the evidence of 22 protestants (37 pages).
 
 
 10
 The judge found that there was a public need for single-line service in portions of the ten-state area[9] covered by the applications and that each applicant was "fit and able, financially and otherwise", to conduct the operations proposed in their applications. Facing the difficult task of choosing which of the applications should be granted, the judge noted that each applicant had attempted "to rely principally upon past interline operations and their competitive presence as justification for the grant of new single- line authority". He concluded that it was therefore necessary to define the actual service provided by each applicant "independent" of the others, particularly where the applicants had engaged in interlining, since "it would not be in the public interest to grant each of the interlining carriers single line authority" unless a need for the additional service was clearly established.
 
 
 11
 The judge found that Widing, Bigge, Mojave, Salt Lake, and Ashworth had each "submitted evidence of existing interline service and past joint line operations," but that "a very substantial part of the evidence" was "duplicated in one or more of the other presentations".[10] Each of these carriers "provides facilities essentially limited on a regional basis".[11] The decision continued: "However, more to the point, each of the five applicants (Mojave, Bigge, SLT, Ashworth and Widing) failed to present documentary evidence that would permit the judge to determine which one, or how many, of these applicants actually provided any physical service, and which merely provided the required operating authority as a bridge carrier or as a passive recipient of a percentage of the revenue".[12] The judge concluded that "on this record there is no practical method to determine whether any one or more of these services are actually required on a single line basis".
 
 
 12
 The court found, however, that the "record clearly establishes the existence of two non-duplicating services between California on the one hand, and, on the other, points in the Pacific Northwest". These carriers were Mitchell and West Coast, whose services were found to be "well defined on this record within the described areas".[13] Since no other applicant was involved in providing the services of these carriers, the judge found that "no additional and destructively surplus services would result in a grant of authority to permit these carriers to continue a beneficial competitive service in this territory". The operations of Reliance between California and Arizona were found to be of a similar character.
 
 
 13
 The judge concluded that "authorization of these three services on a single line basis will not create unnecessary duplicating service, but rather will permit these carriers to provide the exact same service now provided, more efficiently and economically, all to the public benefit". Accordingly the judge recommended that the applications of West Coast, Mitchell, and Reliance, as amended,[14] be granted, giving them substantially the commodity authority sought (see note 2) over the following territory:
 
 
 14
 "(1) in No. MC-54567 (Sub-No. 11) (Reliance) between points in California, on the one hand, and, on the other, points in Arizona, and;
 
 
 15
 "(2) in No. MC-32882 (Sub-No. 60) (Mitchell) and MC-112989 (Sub-No. 20) (West Coast) between points in California, on the one hand, and, on the other, points in Oregon, Washington, and Idaho, and No. MC-112989 (Sub-No. 20) is further restricted against the transportation of construction materials from Santa Clara, Alameda and Contra Costa Counties, Calif., to points in Oregon and Washington . . .."
 
 Contentions on Appeal
 
 16
 In essence all of the petitioners contend that (1) the denial of their applications was arbitrary, capricious, and an abuse of discretion; (2) the administrative law judge overlooked and failed to accord proper weight to substantial evidence which required the granting of their applications; and (3) erroneous and discriminatory standards of law were applied to various parties similarly situated. Widing does not question the grant of authority to Mitchell, but contends that its application should have been granted either in addition to, or instead of, those granted.
 
 Scope of Review
 
 17
 The parties agree that the scope of review of orders of the Interstate Commerce Commission is narrow. 5 U.S.C. § 706 provides in pertinent part:
 
 
 18
 "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall
 
 
 19
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 
 
 20
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 21
 (D) without observance of procedure required by law;
 
 
 22
 (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; . . .."
 
 
 23
 The Supreme Court held in United States v. Pierce Auto Lines, Inc., 327 U.S. 515, 535-536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1946) that the Commission and not the reviewing court is the arbiter of "the paramount public interest" and the function of the reviewing court
 
 
 24
 ". . . is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."
 
 
 25
 The test is "whether the action of the Commission is supported by 'substantial evidence' on the record viewed as a whole". The substantial evidence test is satisfied when the record is "enough to justify, if the trial were to a jury, a refusal to direct a verdict". Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence". This standard "frees the reviewing court of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute". Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1027, 16 L.Ed.2d 131 (1966).
 
 Rationality and Lawfulness of Decision
 
 26
 Congress has conferred broad and exclusive discretion upon the Commission to determine when the public convenience and necessity requires additional services.[15] In multiple application proceedings the Commission is concerned with avoiding the proliferation of operating authorities not actually needed by the public. Accordingly, the Commission has formulated standards to assist it in making this determination. Those standards require consideration of: (1) the existing authorities and operations of applicants; (2) location of terminals and facilities; (3) equipment operated by applicants; (4) which applicant presented evidence supporting the finding of public need; and (5) priority of filing the applications.[16] See, e. g., Willis Shaw Frozen Exp., Inc., Ext. --- Springdale, Ark., 96 M.C.C. 225, 230 (1964). No single factor is controlling, and all must be considered, each accorded such significance as the circumstances warrant. See, e. g., Chemical Leaman Tank Lines, Inc., Ext. --- Avisum Plant, 95 M.C.C. 394, 400 (1964).
 
 
 27
 The administrative law judge considered these factors. Since five interlining carriers sought single-line authority over duplicating routes, and the judge found insufficient public need to justify the approval of all applications, he placed controlling significance upon the actual operations of each interlining carrier. This was a rational basis for choosing among eight motor carriers, each qualified to conduct expanded service. See, e. g., Willis Shaw, supra at 233, where, as here, the Commission relied primarily on evidence of existing operations. The five interlining applicants failed to present clear evidence of their past operations, although they had the opportunity and ability to do so. Having failed in meeting their evidentiary burden, the Commission was justified in denying their applications.
 
 
 28
 Mojave contends that denial on that basis was "utter nonsense". It argues that the Commission thereby formulated a rule allowing a grant of authority to an applicant based on past interline service, but only if the other interlining carriers "are not applicants for the same authority in the same proceeding".
 
 
 29
 Mojave misconstrues the basis and effect of the Commission's decision. The interlining carriers were denied their requested authority not because they were interliners per se, but because either through refusal or neglect, they failed to present clear and substantial evidence of their independent operations. The rule, if any, established here is not that stated by Mojave, but rather that interlining carriers seeking similar authority in the same proceeding may not present evidence as a group, hoping that all their applications will be granted, but rather each must independently present evidence of its own capacity and operations sufficient to satisfy a proven public need.
 
 
 30
 Widing argues that it, unlike the other unsuccessful applicants, did not focuson its past operations, but sought instead to base its application on a strong showing of shipper support. Widing contends that the administrative law judge and the Commission erroneously ignored this evidence, instead of giving it controlling significance. Although this evidence is important to show public need for a particular service, it is not the property of the individual carrier presenting the evidence. Willis Shaw, supra at 230. As noted previously, production of shipper support is not a controlling factor and indeed is unimportant unless other factors are equal. Here the judge found substantial differences in the evidence of the past operations of each carrier, so that consideration of which carrier presented the greatest quantity or quality of shipper support was unnecessary. Placing non-controlling importance upon the shipper evidence was a rational decision, clearly within the discretion of the Commission.
 
 
 31
 Petitioners contend further that the administrative law judge erred in ruling that shipper witnesses should not identify, at the hearing, the applicant in whose support they appeared. We reject this contention for two reasons. First, no timely objection was made by Widing at the hearings, thereby precluding it from raising the issue here for the first time. United States v. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Second, Widing appears to have suffered no prejudice in any case, since each witness filed a Certificate of Support specifying the applicant whom he supported, which was made part of the record.
 
 
 32
 We conclude that the Commission's decision was not arbitrary, capricious or unlawful, was in accord with the Commission's standards, and was founded on a rational basis.
 
 Substantiality of Evidence
 
 33
 Widing and Mojave do not attack the substantiality of the evidence in support of the successful applicants, but rather focus on the sufficiency of the evidence to justify granting their own applications. Widing presents an extensive review of the evidence supporting its application, concluding that "the agency could and should have found for Widing". Mojave likewise does not take issue with the "Commission's findings of fact as such" but with "its failure to make certain findings notwithstanding the overwhelming evidence presented in support" namely, that Mojave's application should have been granted.
 
 
 34
 Petitioners' argument misconstrues the function of this court in reviewing an administrative decision. As previously discussed, the narrow scope of appellate review does not permit the court to weigh the evidence and make factual findings of its own. This is the exclusive province of the Commission. Merchants Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227 (1931). We are limited to a determination of whether there is substantial evidence to support the decision of the Commission. Even though we might conclude that the evidence was sufficient to justify granting petitioners' applications, we may not substitute our judgment for that of the Commission.
 
 
 35
 We conclude that the decision of the Commission is supported by substantial evidence. The evidence submitted by the five interlining applicants was duplicative and failed to clearly establish the individual operations of each carrier, precluding the administrative law judge from making a rational choice among the applicants. The successful applicants, Mitchell, West Coast, and Reliance, on the other hand, presented clear evidence of their individual operations, thereby revealing the need for their services and their competitive presence. These facts, when considered with the other evidence before the Commission and in light of the standards of the Commission in multiple applicant cases, provided substantial support for its decision.
 
 
 36
 We conclude further that the findings of fact were sufficient to reveal the basis of, and to provide support for, the decision of the Commission, in compliance with the Administrative Procedure Act, 5 U.S.C. § 557, and the Interstate Commerce Act, 49 U.S.C. § 14(1). See, e. g., Alabama G. & R. Co. v. United States, 340 U.S. 216, 227-228, 71 S.Ct. 264, 95 L.Ed. 225 (1951).
 
 Conclusion
 
 37
 While petitioner and petitioners-intervenors present strong arguments to support their contention that their applications should have been granted, our decision is limited by the scope of appellate review permissible in a case involving administrative action. We are not to decide whether the Commission made the "right" choice among the applicants, but only whether it made a rational, supportable choice. While this court is not to act as a " rubber stamp" for agency actions, neither is it to decide their wisdom. These questions are better left to the expertise and Congressionally-delegated discretion of the agency. We find this case a proper one for deference to the judgment of the Commission, whose decision was rational and supported by substantial evidence.[17]
 
 
 38
 Accordingly the order of the Commission is affirmed and the petition and petitions in intervention are dismissed.
 
 
 
 *
 Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 49 U.S.C. § 307(a) provides in pertinent part:
 "Subject to section 310 of this title, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity. . . ."
 
 
 [2]
 The commodity authority sought included:
 "(1) commodities which, by reason of size or weight, require special handling or the use of special equipment and commodities which do not require special handling or the use of special equipment when moving in the same shipment on the same bill of lading as commodities which by reason of size or weight require special handling or use of special equipment; (2) self-propelled articles, transported on trailers, and related machinery, tools, parts and supplies moving in connection therewith; (3) iron and steel articles as described in Appendix V to the Commission's report in Descriptions in Motor Carrier Certificates, ex parte, MC 45, 61 M.C.C. 209 and 766; (4) pipe, other than iron and steel, together with fittings; and (5) construction materials . . . restricted against the transportation, (1) commodities in bulk and (2) and (sic) new passenger automobiles in truck-away service." Opinion of administrative law judge, pp. 2-3.
 
 
 [3]
 The various geographic territories sought in these applications included portions of the states of California, Arizona, Nevada, Colorado, Wyoming, Utah, Montana, Idaho, Washington, and Oregon
 
 
 [4]
 "Joint-line service" is a transportation word-of-art used interchangeably with the terms "interline" and "interchange". Joint-line service is a procedure whereby two or more motor carriers combine their authority to provide a through service between points when none of the carriers individually is authorized to provide service over the entire route. For example, carrier A may have hauling authority from point X to point Y, while carrier B has authority from point Y to point Z. A and B can combine their authority and thereby provide service from X to Z
 Depending on the terms of the agreement, the goods being transported may or may not be transferred from the equipment of carrier A to the equipment of carrier B at the point where their respective authorities meet. Thus, one carrier may provide authority for part of the route, but allow the other carrier to use his equipment and drivers over the entire route.
 
 
 [5]
 Single-line service is direct route service by a single carrier having authority over the entire route
 
 
 [6]
 The consolidated proceeding was entitled "Ashworth Transfer Inc. Extension California Points", No. MC-1872 (Sub-No. 77)
 
 
 [7]
 These carriers hold previously-granted single-line authority in various parts of the west. They include J. H. Rose Truck Line, Inc.; Sammons Trucking; C & H Transportation Co., Inc.; C & H Freightways; F-B Truck Line Co.; Harry L. Young & Sons, Inc.; and Dealers Transit, Inc
 
 
 [8]
 The operating authorities were summarized as follows:
 Widing essentially holds irregular route motor carrier authority for "size and weight" (shipments which require special equipment for their loading, unloading, or over-the-road transport) and other specifically enumerated commodities between all points in Idaho, Oregon, and Washington. It also holds intrastate authority in the three former states and in California. It conducts interstate hauling operations into California on an interline or jointline basis with Bigge, Mojave, and Ashworth.
 Bigge holds "size and weight" authority within California, except for six southern counties. It also possesses some specific commodity authority between points in California, Nevada, Oregon and Idaho. It interlines principally with Widing, Ashworth and Mojave.
 Mojave operates its motor carrier service wholly within California, depending, for its interstate traffic, upon interline agreements with Widing, Ashworth, Bigge, and Salt Lake.
 Of the successful applicants, Mitchell holds authority for "size and weight" commodities and building materials between points in the northern two-thirds of California and points in Washington, Oregon, and Idaho.
 West Coast holds "size and weight" and construction equipment authority between California and nine counties in Oregon, as well as lumber and lumber products authority between points in California and Oregon.
 Reliance holds "size and weight" authority between specified portions of Arizona and California.
 
 
 [9]
 The judge did not find sufficient public need to justify an award of authority to all the applicants, nor to justify awards encompassing the entire ten-state area
 
 
 [10]
 The primary duplication occurred in traffic studies submitted by Bigge, Mojave, and Ashworth, listing the truck loads of various commodities which had been handled by each carrier in a previous period. Many of the shipments appeared on the traffic studies of all three carriers
 
 
 [11]
 The judge said further: "Mojave and Bigge have physical facilities only in California and function, insofar as this record discloses, in either a two or three carrier interline service with each other and Ashworth, SLT and Widing. On the other hand, neither Ashworth or SLT had, at the time of interline services here involved, any terminal or other facilities in California. While Widing had terminals in California, the record fairly discloses that these facilities were intended to serve the needs of shippers of bulk chemicals and similar specialized products."
 
 
 [12]
 In fact, several of the carriers claimed credit for physically handling the same loads. For example, Mojave estimated the percentage of shipments it physically handled at 90 percent, while Widing claimed to have handled 75 percent for the same joint-line service
 
 
 [13]
 In contrast to the evidence presented by the other five applicants the judge found that West Coast, Mitchell, and Reliance "provided specific evidence of the scope and character of their service commitment to shippers" which was "distinct and severable from the other applicants"
 
 
 [14]
 Following the hearings, the three carriers reduced the territorial scope of their applications to the extent that a need had been shown for their services
 
 
 [15]
 The term "public convenience and necessity" is not defined in the Interstate Commerce Act. As the Court noted in Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 9 L.Ed. 2051 (1945): "The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. This, of course, gives administrative discretion to the Commission to draw its conclusion from the infinite variety of circumstances which may occur in specific instances." (Citations omitted.)
 
 
 [16]
 The latter two factors are relatively unimportant and are looked to only where the other factors are equal
 
 
 [17]
 In view of this conclusion, it is unnecessary to consider other questions raised by the respective parties