CITY OF OAKLAND, a Municipal Corporation, Petitioners,

v.

Secretary Raymond DONOVAN, United States Department of Labor, et al., Respondents.

No. 82–7291.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1983.

Decided April 12, 1983.

Jayne W. Williams, Oakland, Cal., for petitioners.

Harry Sheinfeld, Washington, D.C., for respondents.

Before TRASK, KENNEDY and POOLE, Circuit Judges.

TRASK, Circuit Judge:

The Secretary of Labor ordered the City of Oakland to repay $61,050 in costs that were incurred by a subgrantee, Vocational Innovation Project (VIP), under a Comprehensive Employment and Training Act (CETA) program. The costs were disallowed because Oakland had not performed an audit of VIP as directed by the Secretary. Oakland was unable to perform the audit but submitted other records concerning VIP's expenditure of the funds. Oakland petitions for review of the Secretary's order.

### I.

Oakland entered into a grant agreement with the Department of Labor (DOL) to operate a CETA program. The agreement covered the period from July 1, 1974 to September 30, 1976. Oakland entered into a subcontract with VIP in November of 1974. VIP was required to achieve 33 training related job entries for Chinese speaking enrollees. During the course of the subcontract, Oakland paid VIP $61,050 based on monthly invoices submitted by VIP.

In its agreement with DOL, Oakland assured the agency that it would comply with CETA requirements. Under CETA, 29 U.S.C. § 801 *et seq.,* and regulations promulgated thereunder, 29 C.F.R. § 98.1 *et seq.,* detailed accounting requirements are imposed on a grantee. In addition to the statutory requirements, Oakland specifically assured it would maintain records and provide the DOL with access thereto to insure that funds were being expended in accordance with the agreement and CETA.

After VIP had performed its subcontract, DOL informed Oakland that it should arrange an audit of VIP. In May of 1976, Oakland notified VIP that an audit had been scheduled. In July of 1976, the CPA hired by Oakland to conduct the audit notified the city that he was unable to complete his task because VIP representatives refused to make their records available. (VIP had dissolved as an organization upon completing the contract with Oakland.) VIP agreed to provide certification, training and placement records, but refused to provide financial records.

In November of 1976, DOL formally notified Oakland that an audit of VIP would be required. VIP eventually provided a one-page summary of income and expenditures in a letter dated January 28, 1977. An audit was never performed.

In January of 1979, DOL notified Oakland it was liable for all questioned costs incurred by VIP and stated it was essential for the matter to be resolved within 30 days. On January 30, 1980, the Grant Officer for DOL made an initial determination to disallow the entire $61,050 subgrant due to the time delays and failure to obtain an audit. The Grant Officer made his final determination to disallow the entire amount of the subcontract by letter dated October 17, 1980. The letter stated that failure to comply with his determination by returning the money to DOL could result in sanctions

ranging from suspension of Oakland's letter of credit to refusal to continue CETA funding.

In March of 1982, the ALJ affirmed the Grant Officer's disallowance of Oakland's expenditures. The ALJ held:

> The evidence shows that, by not having an audit performed and a report of it submitted to the Department of Labor when required, the City of Oakland thereby failed to comply with the Act at 29 U.S.C. § 983(12) as well as paragraph 3(s) of the General Assurances contained in the grant agreement between the City and the Department of Labor. Also, the City violated 29 CFR 98.27(d)(3) of the CETA regulations as well as 29 U.S.C. § 938(12) in failing to insure that VIP, its contractor and subgrantee, maintained and made available to it and the Department of Labor for review all records pertaining to the operations of the VIP program. In addition, the City failed to comply with 29 CFR 98.18 in seeing that VIP's records were retained for 3 years or until audited and with 29 U.S.C. § 983(14) of the Act, 29 CFR 98.5 and 98.6 of the regulations and 3 H,S and U of the grant agreement's General Assurances with the Department of Labor, since it failed to see that the VIP program had adequate administrative and accounting control, maintained its records and provided access to them as necessary for the Secretary's review to assure that the funds were being expended properly.

*In The Matter of City of Oakland, California,* 81–CETA/A–28 at 9–10 (March 5, 1982). The ALJ ordered Oakland to pay DOL $61,050 within 45 days of the order or all CETA funding would be terminated pending compliance. The parties have stipulated to a stay of this order pending appeal.

The issues on review are: (1) whether substantial evidence supports the DOL finding that Oakland violated CETA by failing to audit or otherwise substantiate VIP's expenditures; (2) whether DOL's order that Oakland repay the entire subgrant or lose all CETA funding was arbitrary, capricious or an abuse of discretion; (3) whether DOL violated CETA and due process by failing to provide a hearing regarding the grant termination.

## II.

### *Did Oakland Violate CETA?*

■ The applicable standard of review of the DOL decision is set forth in 29 U.S.C. § 817(b) (Supp. II 1978) which states:

> The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may in whole or in part, set aside the findings of the Secretary or remand the case to the Secretary in whole or in part to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), (*quoting Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *RSR Corp. v. F.T.C.,* 602 F.2d 1317, 1320 (9th Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980). The possibility of drawing a different conclusion than the agency does not prevent the agency's decision from being supported by substantial evidence. *Illinois Cent. R.R. Co. v. Norfolk & W. Ry. Co.,* 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966); *Widing Transportation, Inc. v. I.C.C.,* 545 F.2d 652, 658–59 (9th Cir.1976).

■ As the ALJ stated, Oakland violated CETA by not keeping accurate financial records. CETA requires that:

> (12) the applicant will make such reports, in such form and containing such information as the Secretary may from time to time require, and will keep such records and afford such access thereto as the Secretary may find necessary to assure that funds are being expended in accord-

ance with the provisions of this chapter....

29 U.S.C. § 983(12) (1976) (amended at 29 U.S.C. § 983 (Supp II 1978)). The regulation is more specific:

(a) Each prime sponsor, eligible applicant, and subgrantee shall maintain a financial management system which will provide accurate, current and complete disclosure of the financial results of each grant activity by title of the Act, provide the ability to evaluate the effectiveness of program activities and meet the reporting requirements of this subpart....

29 C.F.R. § 98.5 (1974).

Oakland admits that it did not conduct an audit or keep adequate financial records. The city argues it did the best it could; it tried to audit VIP and it did provide the DOL with all the records it had. The records provided, however, only purported to show ultimate results of VIP's efforts. Determinations of how and where the money was spent apparently could not be made. Oakland was responsible for providing detailed accounting and for seeing that their subgrantees also provided such accounting, 29 C.F.R. 95.41(c) (1974) (current version at 29 C.F.R. 98.27(d) (1982)). Substantial evidence supports the determination that Oakland violated the Act.

### Was the DOL Sanction Arbitrary and Capricious?

Oakland argues that the DOL order to the city to pay the $61,050 or face grant termination is overly harsh and burdensome. As Oakland was granted $11.7 million in CETA funds by the DOL, the city argues that terminating the entire grant over one subcontract worth $61,050 is an abuse of discretion.[1]

■ Congress has given the DOL broad authority to determine sanctions for violations of CETA. 29 U.S.C. § 816(d). In such instances, courts give great deference to agency determinations of sanctions; absent an abuse of discretion the agency determination will be affirmed. *Fidelity Federal Savings & Loan Association v. de la Cuesta,* —— U.S. ——, ——, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir.1980). The sanction imposed must, however, have some relationship to the violation found by the agency. *Swentek v. United States,* 658 F.2d 791, 796 (Ct.Cl.1981). Use of a sweeping rather than a more refined remedy may represent an improvident use of administrative discretion in the absence of a stated justification. *Fairmont Foods Co. v. Hardin,* 442 F.2d 762, 771 (D.C.Cir.1971).

Oakland argues that DOL is required to give two hearings; the first on the issue of possible violations of CETA, and the second on the appropriateness of grant termination. They were not given a second hearing in this case.

■ Oakland's argument appears to be based on an erroneous interpretation of the statutes and regulations. 29 U.S.C. § 816(d) (Supp. II 1978) states in pertinent part:

If the Secretary concludes that any recipient of funds under this chapter is failing to comply with any provision of this chapter or the regulations under this chapter or that the recipient has not taken appropriate action against its subcontractors, subgrantees, and other recipients, the Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate, including the repayment of misspent funds from sources other than funds under this chapter and the withholding of future funding, if prior notice and an opportunity for a hearing have been given to the recipient.

Oakland interprets this language to mean a separate hearing on sanctions must be giv-

---

1. The DOL argues that Oakland has waived its right to contest the sanction of grant termination by not contesting the issue before the ALJ. *See* 20 C.F.R. § 676.88(f). However, Oakland was not on notice that their grant would be terminated if they failed to repay DOL within 30 days until the ALJ made his decision. The grant officer's letter of October 17, 1980, only said Oakland could face a range of sanctions.

en. A more reasonable interpretation is that once a hearing on violations of the Act has been held, then the DOL has authority to impose sanctions. The import of the statute is to prevent the imposition of sanctions without a hearing on the underlying violation.

We remand for a hearing on appropriate sanctions in this case, however, because the DOL decision does not adequately set forth the reasons for terminating Oakland's CETA grant if the city fails to repay on time. We are not holding that a sanction of grant termination is an abuse of discretion; we are stating that on the record before us we can not determine whether there has been a proper exercise of discretion.

Affirmed in part and remanded in part.