in aid of appellant's judgment against Daddy and Western.[1]

### III.

It follows that in this case jurisdiction exists without regard to whether it is viewed as a proceeding independent of the default judgment against Daddy and Western, or as one in aid of that judgment as envisioned by Rule 69(a). In either event, state law will determine the liability, if any, of the appellees. Difficult questions of federal jurisdiction are suggested by the facts of this case. Our holding, however, is a narrow one applicable only to the facts of this case. We intend to lay down no broad jurisdictional principles.

REVERSED and REMANDED.

**QUECHAN INDIAN TRIBE, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 82–7651.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1983.

Decided Jan. 13, 1984.

---

Charles T. Scott, Jr., Escondido, Cal., Steven M. Guttell, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for petitioner.

Sandra D. Lord, Dept. of Labor, Washington, D.C., for respondent.

Before KENNEDY and BOOCHEVER, Circuit Judges, and GILLIAM,* District Judge.

GILLIAM, District Judge:

Quechan Indian Tribe (Quechan) petitions for review of a final order by the Secretary of Labor requiring repayment of $197,452 in CETA grant funds, due to Quechan's failure to comply with CETA regulations. We remand.

## BACKGROUND

Quechan, as a prime sponsor under the Comprehensive Employment and Training

Act of 1973 (CETA), received three grants to carry out CETA programs under Titles II, III and IV of the Act. The grants, totalling $245,380, were paid between December 1974 and April 1976.

The Department of Labor (DOL), on February 11, 1976, notified Quechan that it was in violation of CETA regulations, because it had failed to submit required reports over a fifteen-month period for the three CETA grants. DOL requested that Quechan submit these reports. Despite numerous meetings between DOL officials and Quechan, no reports were received by DOL.

An audit of Quechan's grant expenditures was begun in January 1976 by independent accountants retained by DOL. Many expenditures were questioned by the auditors because of, inter alia, lack of proof of the participants' eligibility to receive CETA funds. The auditors found that the records of the third grant were unauditable, and that the tribe had failed to reconstruct its records.

Based on these audit reports, a DOL grant officer disallowed costs of $196,452. DOL issued its final determination on August 5, 1980, requiring repayment by Quechan of $197,452. Quechan requested a hearing before an Administrative Law Judge (ALJ) pursuant to 20 C.F.R. § 676.-88. The hearing was held on May 22, 1981.[1]

On August 10, 1982, the ALJ issued his decision that the costs were properly disallowed, and ordered Quechan to repay $197,-452. The Secretary of Labor declined to review the ALJ's decision, which then became the final decision of the Secretary. It is from this decision that Quechan petitions for review.[2]

---

* Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

1. Quechan concedes that $22,884 of its CETA grant monies were properly disallowed as unallowable excess administrative costs, and that $2,388 were properly disallowed as unallowable tax penalties.

2. 29 U.S.C.A. § 817(a), under which this court had jurisdiction to review the Secretary's final

order, was repealed on October 13, 1982, some two weeks before Quechan filed its petition for review. *See* Pub.L. No. 97–300, Title I, § 814(a)(1), 96 Stat. 1357 (1982). However, under the transitional provision of the Job Training Partnership Act, 29 U.S.C.A. § 1591(e), this court has statutory authority to exercise jurisdiction over proceedings begun between October 13, 1982 and September 30, 1984 under CETA. *See* Pub.L. No. 97–300, Title I, § 181(e), 96 Stat. 1355 (1982).

## ISSUES

1. Did Quechan bear the burden of proving that CETA funds were expended in accordance with CETA regulations?

2. Was the Secretary's decision that the costs were properly disallowed supported by substantial evidence?[3]

## DISCUSSION

1. The burden of proof.

■ The ALJ relied on 20 C.F.R. § 676.-89(b) in assigning the burden of proof to Quechan.[4] Quechan argues, first, that the regulations contained in 29 C.F.R. Part 97, Subpart B, should have been applied, rather than the general regulations in 20 C.F.R. Part 676, Subpart F. The regulations in 29 C.F.R. Part 97, Subpart B are applicable to Title III CETA programs, and relate specifically to Indian Employment and Training Programs.

The regulations in 29 C.F.R. Part 97, Subpart B do not expressly provide for the allocation of the burden of proof. They state that, if the provisions of Subpart B conflict with other regulations under CETA, Subpart B shall prevail with respect to Title III programs. 29 C.F.R. § 97.-102(a). However, subsequent to the adoption of 29 C.F.R. § 97.102(a), DOL adopted new regulations which stated that, for Indian and Native American programs, "(t)he regulations on complaints, investigations, and sanctions shall be as described in 20 C.F.R. 676.81 through 676.93." 20 C.F.R. § 688.146; 44 Fed.Reg. 64343 (1979). DOL also adopted 29 C.F.R. § 97.102(c) in 1979. This section states in pertinent part:

> The regulations in this part govern programs funded under the Comprehensive Employment and Training Act of 1973 prior to amendment and reauthorization

in 1978 (Pub.L. 95–524, 92 Stat. 1909), and are thus in many particulars superseded by regulations implementing the reauthorized Comprehensive Employment and Training Act, Pub.Law 95–524, 92 Stat. 1909, which are being codified at 20 C.F.R. Parts 675 *et seq.*

29 C.F.R. § 97.102(c) (1979).

20 C.F.R. § 676.89(b) was thus made applicable to Title III programs, and, since 29 C.F.R. Part 97, Subpart B is silent on the issue of the allocation of the burden of proof, there is no direct conflict between it and 20 C.F.R. § 676.89(b), and the ALJ correctly relied on the provisions of 20 C.F.R. § 676.89(b) to assign the burden of proof to Quechan.[5]

■ Quechan argues next that, even if the Title III regulations did not apply, 20 C.F.R. § 676.89(b) and other Subpart F hearing regulations were not published in the 1981 edition of the Code of Federal Regulations, and thus must have been repealed at the time of the 1981 hearing.

Title 20 of the 1981 C.F.R. did indeed delete Subpart F and noted that part as "[Reserved]". However, DOL is required to publish currently its regulations in the federal register. 5 U.S.C. § 552(a)(1). Prior to the 1981 hearing, DOL announced in the Federal Register that, until such time as revised Subpart F regulations were adopted, "the requirements of 20 C.F.R. Part 676, Subpart F, as published on April 3, 1979, remain in effect." 45 Fed.Reg. 33846 (1980). Quechan therefore had adequate notice that the Subpart F regulations of 20 C.F.R. Part 676 were in effect at the time of the hearing. *See United States v. Tijerina,* 407 F.2d 349, 354 (10th Cir.), *cert. denied,* 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93 (1969).

---

3. We do not reach the question of whether the Secretary is authorized to demand repayment of CETA funds expended without proper auditing and bookkeeping procedures because Quechan did not preserve that issue for appeal by its failure to raise it at the administrative level. *Inter-Tribal Council of Nevada v. Department of Labor,* 701 F.2d 770 (9th Cir.1983).

4. The party requesting the hearing shall have the burden of establishing the facts and the entitlement to the relief requested. 20 C.F.R. § 676.89(b), now 20 C.F.R. § 676.90(b).

5. The disallowed costs were not exclusively earmarked for Title III programs, but the regulations in 20 C.F.R. Part 676 were made explicitly applicable to Title II and Title IV programs in 1979. 44 Fed.Reg. 19990 *et seq.* (1979).

## 2. The Secretary's Decision.

The limits of our review of the Secretary's decision are set forth in the CETA:

### A. Standard of Review.

The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set aside the findings of the Secretary or remand the case ... to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

29 U.S.C. § 817 (Supp. II 1978) (repealed Pub.L. 97–300, Title I, § 184[a], 96 Stat. 1357 [1982] ).

### B. Substantial Evidence.

■ DOL's administrative file included the detailed report of the independent audit, and indicated Quechan's lack of compliance with the report requirements.

Quechan relied primarily on evidence of a 67% unemployment rate at the reservation to establish the participants' eligibility. Mr. Albert O'Brien, Jr., the first Quechan CETA director, testified that, because the reservation is very small, he knew when applicants were unemployed. Quechan prepared quarterly status summaries, some of which were not dated, and some were neither signed nor dated. These indicate the participants were unemployed.

Out of about 100 participants in all three grants, at least 52 were funded by the Title III grant. Economically disadvantaged, unemployed, *or* underemployed Indian or Native Americans may participate in Title III grants, so long as they reside within the area covered by the prime sponsor's plan. 29 C.F.R. § 97.132(a)(1). We believe that, at least with respect to Title III applicants, it is logical to infer that the participants were in fact eligible, because, even if they had other employment, the fact that they were economically disadvantaged or under-

employed would still make them eligible to participate in the CETA grant.

With respect to the disallowed costs, Quechan offered conflicting testimony as to whether reports had once been kept but subsequently lost. Mr. O'Brien, Jr. testified that, initially, he reported by telephone to a DOL employee whose name he could not remember. There were apparently some visits to the reservation by DOL personnel, but it appears that, for almost ten months after Quechan began participating in the CETA grants, nothing was said about the lack of reports. In a letter dated September 2, 1975 to grant recipients, DOL emphasized the need to comply with reporting requirements. Significantly too, in September 1975 Grant No. –87, which was to run from 1 July 1975 to 30 June 1976, was amended by additional funding under all three Titles.

The ALJ noted that the present grant officer disclaimed any charge of fraud. However, the ALJ concluded that, while Quechan had shown that it had spent the grant funds on the programs for which they were intended, Quechan had failed to meet its burden of proving that certain specified administrative expenditures were made in furtherance of the grants' purposes, and also that program participants met the condition of eligibility.

It appears from the record before us that Quechan failed to meet its burden of showing that it complied with the requirements of 29 C.F.R. §§ 96.25, 97.132, 97.167(a), 99.-42(c)(1) and 97.161. However, there is no indication that the ALJ considered the equities in this case in arriving at his decision and order of repayment.

The Secretary has authority to waive DOL's right to recoupment. 29 U.S.C. § 816 (Supp. II 1978) (Repealed Pub.L. 97–300, Title I, § 184[a], 96 Stat. 1357 [1982] ). We therefore remand to the Secretary to consider all the equities in making an explicit determination whether the sanction of repayment of almost four-fifths of the grants' total is warranted.[6] The factors that are to be considered in the Secretary's

---

**6.** Except for $25,272, which Quechan concedes were properly disallowed.

decision are: 1) Quechan failed to fulfill important statutory and regulatory duties; 2) Quechan was not advised until September 1975 that it was in violation of CETA regulations, some ten months after Quechan began participating in the CETA grants; 3) the additional funding amendment in September 1975; 4) the extremely high unemployment rate on the reservation; 5) the grant officer's disclaimer of any charges of fraud; and 6) the ALJ's conclusion that Quechan had spent the grant funds on the programs for which they were intended.

Remanded.