**ILLINOIS MIGRANT COUNCIL, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 84–2448.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1985.

Decided Sept. 20, 1985.

Steven D. Cundra, Thompson, Hine & Flory, Washington, D.C., for petitioner.

Louise L. Cavanaugh, U.S. Dept. of Labor, Employment & Training Services, Washington, D.C., for respondent.

Before BAUER, ESCHBACH, Circuit Judges, and PELL, Senior Judge.

BAUER, Circuit Judge.

This case is before us on a petition for review of a final decision of the Secretary of Labor. A Department of Labor Grant Officer disallowed $12,487 in CETA program costs incurred by the petitioner, the Illinois Migrant Council, Inc. An administrative law judge affirmed the Grant Officer's decision. Petitioner appeals, contending that the Grant Officer's decision is invalid and his order for repayment of the disallowed costs is unenforceable. We reject petitioner's arguments and affirm the decision of the administrative law judge.[1]

I

The Illinois Migrant Council, Inc. (IMC) is a private not-for-profit organization which serves migrant and seasonal farm workers in Illinois. IMC has administered federal programs in Illinois since 1966. This appeal concerns a Department of Labor grant to IMC under the Comprehensive Employment and Training Act, 29 U.S.C. § 801 et seq. (Supp. V 1981) (repealed 1982) (CETA), covering the period from January 1, 1975 through December 31, 1975.

After the grant was completed, the Department of Labor authorized an audit of the funds expended under the grant. In February 1976, the public accounting firm conducting the audit sent its final audit report to a Department of Labor Grant Officer. On August 5, 1980, the Grant Officer issued a final determination notifying IMC that $12,487 of its costs for administering the CETA program had been disallowed. The Grant Officer's decision was based on the audit report, which revealed that IMC had exceeded the statutory 20 percent limitation on expenditures for administrative costs by 1.7 percent, or $12,487, without the Grant Officer's prior approval.

Shortly after IMC received notification of the Grant Officer's disallowance, IMC telephoned the Department of Labor several times to discuss the Grant Officer's determination. During these conversations, IMC alleges that the Department of Labor offered to allow IMC to repay the disallowance through "in kind" payments, such as additional program services, rather than through a direct cash payment in exchange for IMC's agreement that it would not appeal the Grant Officer's decision. IMC agreed to the Department of Labor's proposal.

Consequently, IMC submitted a number of proposals for repayment to the Department of Labor. No Grant Officer, however, acted on any of these proposals. On March 30, 1983, IMC notified the Department of Labor that it had negotiated a $11,110 rent reduction with the landlord of a building leased by IMC, and inquired whether this would suffice as an "in kind" payment. On August 17, 1983, the Department of Labor notified IMC that it would not accept any "in kind" payment of the disallowance. IMC then filed an appeal with the Office of Administrative Law Judges.

On January 26, 1984 the Grant Officer moved to dismiss IMC's appeal on the ground that the Office of Administrative Law Judges had no jurisdiction to hear an appeal concerning the Department of Labor's denial of a proposed method for repaying an established debt. The Grant Officer further contended that if IMC was appealing his determination disallowing the $12,487 in administrative costs, the claim should be dismissed as untimely. On

---

1. The ALJ's decision became the "final action" of the Secretary of Labor as provided for by 29 U.S.C. § 817 (1978) and 20 C.F.R. § 676.91(f) (as amended, 49 Fed.Reg. 19639 (May 9, 1984)). Therefore, although we refer to the written opinion of the ALJ, we are, in effect, affirming the Secretary of Labor's dismissal of IMC's request for an administrative hearing.

March 19, 1984, IMC filed a cross-motion to dismiss, arguing that the disallowance was invalid because it was not made within 120 days after the Grant Officer received the final audit report, thereby violating Section 106 of CETA, 29 U.S.C. § 816(b) (1978). IMC further argued that its appeal should not be dismissed as untimely because it had good cause for exceeding the ten day limit in which appeals must be filed.

The administrative law judge held that the 120 day period set forth in Section 106(b) was not jurisdictional, and that therefore the Grant Officer was not precluded from making his final determination of a disallowance after that time period expired. The ALJ further held that the ten day limitation for the filing of appeals also was not jurisdictional, but that IMC did not show good cause for exceeding that time period. Finally, the ALJ held that the method of repayment requested by the Department of Labor was reasonable and that the Grant Officer did not abuse his discretion in imposing that sanction, and thus a hearing on the propriety of the method of repayment was not necessary. Therefore, the ALJ dismissed IMC's appeal.

## II

■ IMC argues that the ALJ was incorrect in holding that the 120 day time limit imposed by Section 106(b) of CETA, 29 U.S.C. § 816(b) (1978), is not jurisdictional. IMC contends that if a Grant Officer does not issue a final determination within that time period, the Department of Labor is divested of jurisdiction over that case. This court recently held, however, that a "Grant Officer's failure to comply with the 120-day deadline of 106(b) [will] not divest the DOL of jurisdiction...." *Milwaukee County, Wisconsin v. Brock,* 771 F.2d 983, 990 (7th Cir.1985). *Accord St. Regis Mohawk Tribe, New York v. Brock,* 769 F.2d 37, 46 (2d Cir.1985). *But see City of Edmunds v. United States Department of Labor,* 749 F.2d 1419 (9th Cir.1984) (Section 106(b) is jurisdictional constraint); *Lehigh Valley Manpower Program v. Donovan,*

718 F.2d 99 (3d Cir.1983) (same). We will not reiterate, but simply adopt, the thorough and cogent analysis of this issue contained in *Milwaukee County.* *See Milwaukee County,* 771 F.2d at 986–990. *See also St. Regis Mohawk Tribe,* 769 F.2d at 40–46. Therefore, we reject IMC's claim that the 120 day time limit contained in Section 106(b) is jurisdictional.

IMC argues that even if the 120 day time limit contained in Section 106(b) is not jurisdictional, "the Grant Officer's four and one-half year delay in issuing a final determination ... so prejudiced IMC that the ALJ should have held that the final determination was unenforceable." Petitioner's br. at 26. IMC alleges that this passage of time prejudiced its ability to contest the disallowance because significant witnesses and documents are now unavailable. IMC also argues that it was prejudiced by the Grant Officer's failure to produce the administrative file before the ALJ's review of this case. Although these arguments may have had some merit in September 1980, IMC did not contest the disallowance at that time, but waited another three years after the final determination to file its appeal. As our following discussion concerning the untimeliness of IMC's appeal will indicate, this renders any arguments IMC would have made as to the validity of the disallowance moot.

## III

■ IMC contends that the ALJ erroneously concluded that it was not entitled to a hearing on the disallowance because it had not filed its appeal within 10 days of the Grant Officer's final determination. In reaching this decision, the ALJ stated that this 10 day time limit for appeals does not absolutely bar late appeals, but that "[i]t may be waived upon a showing of good cause or for 'extraordinary and exceptional circumstances.'" *In the Matter of Department of Labor v. Illinois Migrant Council,* No. 83–CTA–308, p. 3 (May 4, 1984) (citation omitted). The ALJ found, however, that IMC had not shown good cause for the three year delay in filing its

appeal. IMC argues that it had good cause for the delay because it did not appeal in September 1980 in reliance on the Department of Labor's promise that it would accept "in kind" payments for the disallowance. IMC therefore contends that the doctrine of equitable estoppel should prevent the 10 day limitation from barring its appeal.

Section 107(b) of CETA provides that "[t]he findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive...." 29 U.S.C. § 817(b) (1978). In a variety of statutes, the Supreme Court has held that "'supported by substantial evidence' ... 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In finding that IMC did not have good cause to delay filing its appeal for three years, the ALJ stated that

> it was made clear to IMC through the Act, the regulatory provision and through the clear language of the Final Determination itself that IMC only had ten days in which to request a hearing. The Final Determination also made clear that if an administrative hearing was not requested, the debt established becomes a civil claim of the United States and failure to make repayment could result in collection actions. Because of all of this language, IMC could not reasonably have concluded that a DOL employee could waive the ten day limitation for IMC. Thus, the doctrine of equitable estoppel cannot apply.

*Illinois Migrant Council*, 83–CTA–308 at p. 4. We therefore hold that the ALJ's ruling was supported by substantial evidence and accordingly affirm the ALJ's dismissal of IMC's challenge to the disallowance as untimely.

## IV

Finally, IMC contends that the ALJ erred in finding that the Department of Labor's rejection of any "in kind" payment for the disallowance was not unreasonable. IMC concedes that the Department of Labor has broad authority to determine sanctions for CETA violations, but argues that the ALJ abused his discretion by allowing the Department of Labor to demand cash repayment because he did not "consider 'all the equities' and make 'an explicit determination whether the sanction of repayment ... is warranted' before imposing such a sanction." Petitioner's br. at 36 (*quoting Quechan Indian Tribe v. United States Department of Labor*, 723 F.2d 733, 736 (9th Cir.1984)). The Department of Labor, on the other hand, contends that IMC is not even entitled to a hearing on its claim that the Department of Labor improperly demanded repayment in cash for the disallowance.

In *City of Oakland v. Donovan*, 703 F.2d 1104, *modified*, 707 F.2d 1013 (9th Cir.1983), the Ninth Circuit addressed the question of whether the Department of Labor is required to give two hearings: the first on the issue of possible violations of CETA, and the second, if necessary, on the appropriateness of the sanction imposed for a violation. 703 F.2d at 1107. The Ninth Circuit held that "once a hearing on violations of the Act has been held, then the DOL has authority to impose sanctions. The import of the statute is to prevent the imposition of sanctions without a hearing on the underlying violation." *Id.* at 1108. We agree with this interpretation of the statute. As the Second Circuit noted in *St. Regis Mohawk Tribe*, Congress intended to give the Department of Labor broad powers to enforce the Act once it has determined that a violation has occurred. 769 F.2d at 50. Therefore, the ALJ was not required to "consider all the equities" and explicitly determine whether IMC should be required to repay the Department of Labor in cash, as IMC asserts. In *Quechan Indian Tribe*, which IMC cites as support for its position, the propriety of the Department of Labor's sanction was timely appealed along with the Department of Labor's finding of a CETA violation. Therefore, its holding is not controlling here.

For the reasons stated above, the judgment of the administrative law judge is affirmed.

Affirmed.