The **BLACKFEET TRIBE**, Petitioner,

v.

**UNITED STATES DEPARTMENT OF LABOR**, Respondent.

No. 83–7775.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 26, 1985.

Withdrawn from Submission Nov. 26, 1985.

Resubmitted June 24, 1986.

Decided Jan. 26, 1987.

Daniel S. Press, Washington, D.C., for petitioner.

Department of Labor, Louise L. Cavanaugh, Washington, D.C., for respondent.

Before WALLACE, FARRIS and HALL, Circuit Judges.

WALLACE, Circuit Judge:

The Blackfeet Indian Tribe (the Tribe) seeks review of a ruling by an administrative law judge (ALJ), adopted by the Secretary of Labor (the Secretary), dismissing as untimely the Tribe's appeal from a decision requiring the Tribe to reimburse over $300,000 in grant money previously distributed to it under the Comprehensive Employment and Training Act (CETA), 92 Stat. 1909–2017 (1978) (formerly codified at 29 U.S.C. §§ 801–999 (Supp. V 1981)). The ALJ had jurisdiction to dismiss the appeal pursuant to CETA § 106(i)(2) (formerly codified at 29 U.S.C. § 816(i)(2)). We have jurisdiction to review the ALJ's decision, accepted by the Secretary, pursuant to CETA § 107(a) (formerly codified at 29 U.S.C. § 817(a)) (repealed October 13, 1982, but in effect for all proceedings instituted before September 30, 1984). Applying a highly deferential standard of review, we affirm.

I

This dispute arose out of the Tribe's misadministration of an employment training program established under CETA. Between 1975 and 1977, the Tribe received two grants from the Department of Labor (the Department) to operate a CETA program. The Department hired an independent auditor to undertake a routine audit of the Tribe's expenditure of the funds. On September 26, 1976, the accountants reported that they could not audit the expenditures under the first grant because the Tribe had not maintained various records required by CETA regulations. The chairman of the Tribe was informed of these findings by letter dated November 18, 1976, and given 30 days to respond. He did not reply. Two years later, on December 27, 1978, a second letter was sent to the Tribal chairman giving the Tribe another 30 days to respond to the unfavorable audit report. Again, the Tribe did not formally respond.

Faced with the Tribe's silence, the Department issued an initial determination on October 21, 1980, disallowing the entire first grant of $60,824. Because the Tribe did not object to the initial determination, on February 2, 1981, the Department issued a final determination disallowing this amount.

CETA program recipients were allowed by statute ten days to appeal final determinations. CETA § 106(i)(2) (formerly codified at 29 U.S.C. § 816(i)(2)). The Tribe was informed by letter of the final determination and of its right to appeal:

> In accordance with U.S. Department of Labor regulations [20 C.F.R. § 676.88 (1981)], you have the opportunity to request a hearing of this final determination. If you choose to request a hearing, the regulations require you to file your request with the Chief Administrative Law Judge.... The request must be mailed by certified mail return receipt requested not later than 10 days after receipt of this letter and final determination.

The Tribe did not respond to this notice.

A similar situation arose with respect to the Tribe's second CETA grant. The auditors issued a report on August 4, 1978, questioning $242,946 in expenditures. On

April 9, 1979, the Tribe's CETA director notified the Department that the Tribe was working on a reply to the report. No further correspondence was received from the Tribe. The Department issued an initial determination on October 29, 1980, disallowing the entire $242,956. As it had before, the Tribe ignored the final determination, and therefore on May 8, 1981, a final determination was issued. The Tribe was again informed that it had ten days to request an administrative hearing. The Tribe did not make such a request. As a result, both final determinations became civil claims of the United States subject to collection.

In August 1982, the Department warned the Tribe that unless they paid this debt, future Department grants would be disapproved. Prompted by this threat, the Tribe finally requested an administrative hearing on October 14, 1982, 20 months after the first final determination and 17 months after the second.

On August 22, 1983, an ALJ dismissed the Tribe's request for a hearing as untimely filed. The ALJ held that even though the ten day filing requirement of CETA § 106(i)(2) was not jurisdictional, the Tribe had not shown any "extraordinary and exceptional circumstances" that would warrant excusing the late filing. The Secretary declined to review the ALJ's decision, and consequently the ALJ's decision became the Secretary's final order pursuant to 20 C.F.R. § 676.91(f) (1984).

The Tribe filed a timely petition for review with this court on October 18, 1983. We ordered the case withdrawn from submission on November 26, 1985, pending resolution by the Supreme Court of *Brock v. Pierce County*, — U.S. —, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). *Brock* having been decided, we ordered the case resubmitted on June 24, 1986,[1] and now we affirm the Secretary's determination.

## II

The issue before us is very narrow. The Secretary clearly had authority to recoup the funds:

If the Secretary concludes that any recipient of funds under this chapter is failing to comply with any provision of this chapter of the regulations under this chapter ... the Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate....

29 U.S.C. § 816(d) (repealed 1982); *accord Alameda County Training & Employment Board v. Donovan*, 743 F.2d 1267, 1269 (9th Cir.1984) (per curiam). Moreover, there is no dispute that the Tribe did not file for a hearing within the ten-day period required by CETA section 106(i)(2). We are not reviewing the propriety of the final determinations that disallowed the Tribe's CETA expenditures. Our focus is solely on the ALJ's decision, adopted by the Secretary, dismissing the Tribe's untimely request for a hearing.

Our scope of review is narrow. Under the provisions of the Administrative Procedures Act, we will reverse the Secretary's decision only if it was "arbitrary, capricious, or an abuse of discretion." 5 U.S.C. § 706(2)(A). To the extent this dispute involves issues of statutory interpretation, we review them de novo, recognizing, however, that the Secretary's interpretation of the governing statutes and regulations is entitled to great deference. *Marathon Oil Co. v. United States*, 807 F.2d 759, 765 (9th Cir.1986). Factual determinations will be set aside only if they are not supported by substantial evidence. CETA § 107(b) (formerly codified at 29 U.S.C. § 817(b)).

The Tribe first contends that the Secretary should not have applied the "exceptional circumstances" test as the standard for relief from the filing requirements, but instead a presumably more lenient "excusable neglect" standard. Second, the Tribe argues that even if the higher standard is applied, the Secretary erred in finding that exceptional circumstances were not present.

---

1. This case was reassigned to the present author on October 13, 1986.

## III

We have never conclusively determined what standard should be applied for excusing an untimely appeal of a final determination disallowing CETA expenditures. The Secretary applied an "exceptional circumstances" standard. The Tribe contends that the Secretary should have adopted the excusable neglect standard applied to vacating default judgments under Fed.R.Civ.P. 6(b) and 55(c). This argument is based on 20 C.F.R. § 676.89(a) (1984), which provides that absent any other statutory direction, "the ALJ should be guided to the extent practicable by any pertinent provisions of the Federal Rules of Civil Procedure."

Department ALJs have consistently applied the exceptional circumstances standard when considering whether to grant relief from the ten-day filing requirement. *See In re Oglala Sioux Tribe*, 82–CETA–128 (Aug. 16, 1982); *Walker v. Orange County/Orlando Training and Employment Office*, 81–CETA–168 (May 11, 1981). The ALJs have modeled this standard on an analogous rule applied by the Board of Contract Appeals in treating untimely requests for appeals from final decisions made by government contracting officers. Further support for the standard can be derived from the well-established rule governing petitions to rehear final orders of administrative agencies.

In that context, courts have consistently ruled that administrative agencies should not be required to reopen their final orders "except in the most extraordinary circumstances." *Mobil Oil Corp. v. Interstate Commerce Commission*, 685 F.2d 624, 631 (D.C.Cir.1982) (citations omitted); *see also Nance v. Environmental Protection Agency*, 645 F.2d 701, 717 (9th Cir.), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). The rationale for this general rule was articulated by the Supreme Court in *Interstate Commerce Commission v. Jersey City*, 322 U.S. 503, 514–15, 64 S.Ct. 1129, 1134–35, 88 L.Ed. 1420 (1944):

If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening. It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not of the reviewing body.

Similar considerations are involved here. Initially, the Tribe had a right to request a hearing with respect to each final determination. Congress determined, however, that this right should lapse after ten days. Such administrative filing periods serve the legitimate interests of administrative efficiency and finality. After the ten days, any further request for a hearing which would reopen the administrative process was addressed to the discretion of the Department. That the Department should not liberally exercise this discretion is "almost a rule of necessity." *Id.* The exceptional circumstances standard thus affords an appropriate guide for that discretion. *See Illinois Migrant Council, Inc. v. Department of Labor*, 773 F.2d 180, 182–83 (7th Cir.1985).

Even if we accepted the Tribe's argument that principles of the Federal Rules of Civil Procedure should govern, it does not necessarily follow that the Secretary's analysis would have been any different. The Tribe urges that the dismissal is akin to a default judgment that should be set aside, on the authority of Fed.R.Civ.P. 55, if the Tribe can show "good faith" and some reasonable basis for noncompliance. In similar situations arising under the federal rules, however, we have interpreted the phrase "excusable neglect" as requiring a showing of "exceptional circumstances." We have ruled, for example, that for purposes of rule 4(a)(5) of the Federal Rules of Appellate Procedure, a "district court's finding of excusable neglect is sus-

tainable only if there were exceptional circumstances that prevented a timely filing." *Islamic Republic of Iran v. Boeing Co.,* 739 F.2d 464, 465 (9th Cir.1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1755, 84 L.Ed.2d 819 (1985). In the context of the instant case, where the Tribe, in effect, has asked the Secretary to reconsider his final determination, we conclude that there is no appreciable difference between the "excusable neglect" and "exceptional circumstances" standards.

Accordingly, we defer to the Secretary's interpretation of the statute and hold that the Secretary may apply the exceptional circumstances standard when considering whether to grant relief from the ten-day filing requirement of CETA § 106(i)(2).

## IV

The Tribe argues in the alternative that the Secretary abused his discretion in not finding exceptional circumstances. The Tribe makes two arguments: (1) that it was never given proper notice of the charges against it or the sanctions it was facing for failure to reply, and (2) that the Secretary's decision was not based on substantial evidence, contrary to the requirements of CETA § 107(b) (formerly codified at 29 U.S.C. § 817(b)).

■ Between November 18, 1976, and May 8, 1981, the Tribe was sent seven separate notices warning it that its CETA program was not meeting the standards required by statute and regulations. All of these notices in one way or another stressed that failure to respond would result in sanctions. Both final determination letters emphasized that the Tribe had ten days to request a hearing, and that failure to do so would result in the disallowed costs becoming debts collectable by the United States. Similarly, the initial determination letters properly informed the Tribe of their program's shortcomings, warned them that all questioned costs would be "disallowed," and offered the Tribe an opportunity to resolve the difficulties informally. The contents of these letters to the Tribe were more than sufficient

to meet the notice requirements of CETA. *See* CETA § 106(i) (formerly codified at 29 U.S.C. § 816(i)).

The Tribe claims that it did not have actual notice of the plight of its program because the letters were sent to the Tribe's CETA director and not to the Tribal council. The Tribe's CETA director was fully responsible for administering the program; notice to him was sufficient. Moreover, the Secretary found that all correspondence prior to June 24, 1980, was sent directly to the Tribal council. In particular, the Department sent a letter to the Tribal chairman on December 27, 1978, warning him that he had 30 days to respond to the unfavorable audits. This letter, and the others like it, belie the Tribe's argument that it was not given fair notice and a chance to respond.

■ A similar fate befalls the Tribe's claim the Secretary's findings are not supported by substantial evidence. The administrative record in this case manifests a reckless disregard by the Tribe of both the numerous warnings it received and of the CETA program's statutory requirements. The Tribe's sole response to these warnings was to arrange a single meeting between Tribe officials and the Director of Native American Programs for the Department. This meeting occurred on January 11, 1979, long before the initial and final determinations were issued. The Tribe does not suggest that this meeting accomplished anything substantial. Instead of making further remedial steps, the Tribe did nothing, culminating in 17 and 20 month delays before filing for a hearing. This single meeting, absent other affirmative steps, does not excuse the Tribe's egregiously late filing.

Nor can we say that the Department's dilatory handling of the audit reports created "exceptional circumstances." CETA statutes require the Secretary to investigate and make a final determination within 120 days of receiving an audit report questioning a grantee's expenditures. CETA § 106(b) (formerly codified at 29 U.S.C.

§ 816(b)). Here, the Secretary did not issue his final determination disallowing the first grant until four years after the initial audit was received. The determination disallowing costs of the second grant was nearly three years late. Nevertheless, the 120 day requirement is not jurisdictional, and therefore failure to meet it does not divest the Secretary of authority to issue either of the two final determinations. *Brock v. Pierce County*, 106 S.Ct. at 1842.

Although we do not approve of the Department's procrastination, this alone does not excuse the Tribe's own 17 and 20 month delays. The Tribe has failed to show any nexus between the Secretary's delay and its inability to file a timely request for a hearing. Nor has the Tribe shown that it suffered any prejudice because of the Department's delay. Given this situation, we conclude that substantial evidence supports the Secretary's ruling that the Tribe failed to show exceptional circumstances.

## V

When the Tribe chose to accept the CETA grants, it specifically agreed to comply with the procedural requirements of CETA. These procedural requirements, and in particular the ten-day filing requirement, legitimately serve the interests of administrative efficiency and finality. The Secretary can fairly require CETA sponsors to comply with those filing periods. *United States v. Locke*, 471 U.S. 84, 101, 105 S.Ct. 1785, 1795, 85 L.Ed.2d 64 (1985); *Duval Corp. v. Donovan*, 650 F.2d 1051, 1054 (9th Cir.1981). Having accepted the benefits of the CETA program, the Tribe cannot now be heard to complain that it should be excused from the program's ten-day filing requirement. *See City of Oakland v. Donovan*, 703 F.2d 1104 (9th Cir.), *modified*, 707 F.2d 1013 (9th Cir.1983) (failure to comply with CETA auditing requirements justifies repayment of full amount of grant).

The Secretary did not abuse his discretion in dismissing the Tribe's untimely request for a hearing.

AFFIRMED.

FARRIS, Circuit Judge, dissenting.

I respectfully dissent.

The Secretary of Labor's dismissal of the Tribe's petition for a hearing failed to take into account the Department of Labor's delays and unresponsiveness in monitoring problems with record keeping in the Tribe's CETA programs. The Department's delays constitute "exceptional circumstances," entitling the Tribe to relief from the ten-day time limit for requesting a hearing under CETA § 106(i)(2) (formerly codified at 29 U.S.C. § 816(i)(2)) and 20 C.F.R. § 676.88(f). I would reverse and remand for a hearing to review the two final determinations concerning the Tribe's CETA grants.

The Department's delays are evident in the record. On September 29, 1976, the Department of Labor learned that CETA programs established by the Blackfeet Tribe had record-keeping deficiencies that made the programs unauditable. More than four years and four months later, on February 2, 1981, the Department's local grant officer issued a final determination disallowing the full amount of the grant (Grant # 1) and demanding its repayment.

On October 4, 1978, the Department of Labor learned of questionable costs after an audit of a later CETA grant (Grant # 2) to the Tribe. Two years and seven months later, on May 8, 1981, the Department's local grant officer issued a final determination disallowing the questioned costs and demanding their repayment.

The Department of Labor's long-delayed final determinations in this case resulted from delays at each step of the Department's response to the accountants' reports on deficient records in the Blackfeet CETA programs. The Department first notified the Tribe on November 18, 1976, that Grant # 1 was unauditable. Upon receiving no reply from the Tribe, the Department waited two years before sending a second notice to the Tribe on December 27, 1978. Nearly two more years passed before the

Department issued the initial determination of disallowance for Grant # 1 on October 21, 1980. Similarly, after notifying the Tribe on August 4, 1978, of difficulties in auditing Grant # 2, the Department did nothing for nearly two years, notifying the Tribe's CETA Director on June 24, 1980 of its inability to audit the Tribe's programs. The Department issued the initial determination of disallowance for Grant # 2 on October 29, 1980.

The Tribe did not respond to the Department's first notice of problems with Grant # 1. Contrary to the ruling of the administrative law judge, however, the Tribe responded quickly to the Department's second notice of problems in auditing Grant # 1. Within thirty days of receiving the letter of December 27, 1978, a Tribal delegation met with Alexander McNabb in Washington to discuss difficulties the Tribe had getting information from its CETA Director, James Baker, concerning the Tribe's CETA programs. Mr. McNabb refused to give the delegation any information on the Department's audits of the programs. In 1981, when the Tribe's accountant offered to provide information necessary to audit Grant # 1, the Department refused to respond to the offer because it came two months after the final determination had been issued. This refusal is extraordinary when the final determination itself came more than four years after the Department first learned of problems in auditing the grant.

Both final determinations were made long after the 120 days prescribed by Section 106(b) of CETA, as amended in 1978:

> [W]henever the Secretary has reason to believe (because of an audit, report, on-site review, or otherwise) that a recipient of financial assistance under this chapter is failing to comply with ... regulations under this chapter, ... the Secretary shall conduct such investigation, and make the final determination ... not later than 120 days after receiving the [audit, report, or on-site review].

Pub.L. No. 95–524, § 106(b), 92 Stat. 1909, 2926 (1978) (formerly codified at 29 U.S.C. § 816(b)).

There were good reasons for requiring the Secretary of Labor to complete investigations within 120 days. Congress was concerned with abuses in the CETA program when it passed the 1978 amendments. Early drafts of Section 106(b) did not include time limits for the Secretary's investigations of abuses. When the time limit was added by amendment on the House floor, no explanation was offered. *See* 124 Cong.Rec. H25230–31 (daily ed. Aug. 9, 1978) (statement of Rep. Obey). Later statements, however, suggest that the time limit was intended to make enforcement prompt enough to *improve* programs, not just to police them. The Senate's October report on the CETA amendments said that the new supervisory provisions were "to insure that program abuses are deterred, exposed, *and corrected.*" S.Rep. No. 891, 95th Cong., 2d Sess. 43, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4480, 4523 (emphasis added). Other language in the Senate report strongly suggested that the Secretary's supervisory role was to be more than a policing role:

> [T]he Secretary's role in the CETA program should not be limited to obligating funds, interpreting the Act through regulations, and monitoring and enforcing compliance with [the Act]. Such a role, although obviously essential...., is not enough.... The Secretary, along with regulatory and funding roles, has an overall programmatic responsibility to assist prime sponsors ... in conducting their programs with efficiency and effectiveness with a view to the long-term employment and training needs of the Nation. *Id.* at 26, U.S.Code Cong. & Admin.News 1978, p. 4506.

The Secretary's failure to make the two final determinations within 120 days of receiving the audit reports on the Blackfeet programs did not divest him of jurisdiction over the grants. *See Brock v. Pierce County,* —— U.S. ——, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). His failure does, however, create "exceptional circumstances"

that entitle the Tribe to relief from the statutory requirement that the Tribe request a hearing within ten days after notice of the final determinations. *See In the matter of Oglala Sioux Tribe,* 82 CET[A]–128 (August 16, 1982). Delaying the final determinations on the Tribe's CETA grants made it difficult if not impossible for the Tribe to correct the problems that precluded a complete audit.

Although I would hold that the circumstances of this case are exceptional, the standard for granting relief from CETA's ten-day limit for appeals need not be so strict. Several CETA cases purport to adopt this "exceptional circumstances" rule from the Court of Claims. *See Oglala Sioux Tribe,* at 5. The Court of Claims reviews decisions by agency boards of appeals in federal contract disputes. When a party fails to appeal within a contractual time limit, the Court of Claims requires a board of contract appeals to be flexible in enforcing the time limit. "[S]trict compliance with the time limit ... for the taking of appeals is not jurisdictional, and ... boards of contract appeals have the power, in *proper circumstances* to extend or waive compliance with such time limit." *J.R. Youngdale Construction Co. v. United States,* 504 F.2d 1124, 1128, 205 Ct.Cl. 578 (1974) (citations omitted) (emphasis added). Elsewhere the Court of Claims has required boards of appeals to look at the "facts and circumstances" when a party misses an appeals deadline. *See, e.g., Monroe M. Tapper & Associates v. United States,* 514 F.2d 1003, 206 Ct.Cl. 446 (1975). In none of the Court of Claims cases cited by *Oglala Sioux* did the Court of Claims require "exceptional circumstances" for the discretionary waiver of appeals deadlines. In CETA cases, moreover, such a strict standard is not contemplated by the provision for a discretionary hearing when "fairness and the effective operation of CETA programs would be furthered." 20 CFR § 676.88(i). This provision was interpreted strictly in *In the matter of Walker v. Orange County/Orlando Training and Employment Office,* 81–CETA–168 (May 11, 1981). But the agency's interpretation of

this provision is entitled to little deference when it conflicts with Congress's intent that the Secretary supervise rather than just police CETA grants.

Because of the Department's delays in supervising the Tribe's CETA programs, the Secretary of Labor abused his discretion in not granting the Tribe relief from the ten-day statutory limit for requesting a hearing. I would reverse and remand for a hearing on the Tribe's defenses to the Secretary's final determinations and disallowances of the two CETA grants.